**David D. Park**, OSB #803358
ELLIOTT & PARK, P.C.
Abernethy House
324 S. Abernethy Street
Portland, OR 97239-8529
Telephone:     (503) 227-1690
Facsimile:     (503) 274-8384
E-mail:  dave@elliott-park.com

**J. Ashlee Albies**, OSB #051846
**Maya Rinta,** OSB #195058
Albies, Stark & Guerriero
1500 SW First Ave., Suite 1000
Portland, Oregon 97201
Telephone: (503) 308-4770
Email: ashlee@albiesstark.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ESTATE OF AARON D. STANTON, by DOUGLAS STANTON, Personal Representative, and A. S., a minor, by and through her Guardian ad Litem, DOUGLAS STANTON,<br><br>Plaintiffs,<br><br>v.<br><br>JOSHUA DYK and CITY OF PORTLAND, a municipal corporation,<br><br>Defendants. | Case No. 3:23-cv-01767-AN<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE** |

## I.     INTRODUCTION

Defendants move this Court for an order striking allegations in Plaintiffs' Complaint related to the Portland Police Bureau ("PPB")'s long history of failing to properly investigate or discipline officers for using deadly force against community members, even where those officers

Page 1 – **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

have violated policy, and have resulted in civil liability. Defendants attempt to disaggregate the current case from relevant context: the lack of effective police accountability and oversight in the City of Portland stretching back decades. Because the current case is another manifestation of the City's continued failure to properly train or hold accountable its officers who violate that training—and, the City's ratification of violative conduct— this Court should not dismiss the relevant historical context as set out in the Complaint.

## II.   ARGUMENT

Pursuant to Fed. R. Civ. P. 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . ." *Id* (internal citations omitted). "A motion to strike under Rule 12(f) should be denied unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." *Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*, 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001). Moreover, when considering a defendant's motion to strike, the court must accept the plaintiffs' allegations as true and liberally construe the complaint in the light most favorable to the plaintiff. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010).

To establish municipal liability under 42 USC § 1983, plaintiffs must identify a municipal custom or policy (a *Monell* claim) that caused their injury. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011) (citations omitted). Plaintiffs may prove an unconstitutional policy or practice by showing "a longstanding practice or custom which

constitutes the standard operating procedure of the local government entity." *Ulrich v. City & Count of San Francisco,* 308 F.3d 968, 984-85 (9th Cir. 2002) (internal quotation marks and citations omitted). In order to prove a *Monell* claim, plaintiffs must "demonstrate that an 'official policy, custom or pattern' on the part of [the defendant] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022, 1026 (9th Cir. 2008).

Liability may be grounded in policies of inaction or omission, as well as policies of action or omission. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). A policy of inaction or omission may be based on a municipality's "failure to implement procedural safeguards to prevent constitutional violations." *Tsao*, 698 F.3d at 1143 (citation omitted). The municipality will be liable as a consequence of its omissions "for a constitutional violation committed by one of its employees, even though its formal written policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind to prove the underlying violation." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185-86 (9th Cir. 2002), *overruled on other grounds*, *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). A policy is a cause or "moving force" behind the underlying violation of plaintiff's rights if an appropriate policy "could have prevented the violation. *Id*. at 1194.

Here, the City moves to strike 14 allegations contained in the subparagraphs of paragraph 37 of Plaintiffs' Complaint related to their *Monell* claim, including under a theory that the PPB has yet to address the longstanding pattern and practice of excessive use of force against people in mental health crisis, as articulated in the lawsuit brought against it twelve years ago by the United States Department of Justice "("USDOJ"). Compl. ¶36. As Plaintiffs allege,

Page 3 – **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

>the Portland Police Bureau has revised its use of force policies and training to emphasize de-escalation and accountability when policies and training intended to mitigate use of force are violated. In practice, however, the Portland Police Bureau does not effectively discipline officers who fail to de-escalate confrontations, does not effectively discipline officers who use excessive force, inclusive of excessive deadly force and does not effectively discipline supervisors who fail to follow the use of force review and reporting procedures essential to the accountability (disciplinary) process.

*Id.*

Defendants do not – and cannot – contest that, between 2008 and 2018, 33 of 57 (58%) of PPB officer-involved shootings and in-custody deaths involved persons in mental health crises or that the City has only *once* effectively disciplined a PPB Officer involved in any of the above incidents. Compl. ¶37. Instead, Defendants argue allegations related to this long and painful history are immaterial and impertinent to the issues in the current case, "unworthy of any consideration," and "prejudicial.[1]" Defs' Rule 12 Motion to Strike at pp. 5, 7. These allegations, however, are directly relevant to prove the City's practice and custom alleged in the complaint and the motion should be denied.

**A. Defendants seek to strike allegations that support and set context for the *Monell* claim**

Plaintiffs make one *Monell* claim, alleging the City has long engaged in a pattern and practice of custom and practice of failing to investigate and discipline for excessive use of force. Compl. at Count II, ¶43. Paragraphs 35 through 39 of the complaint set out the factual allegations establishing municipal liability against the City supporting this theory. Paragraph 38 alleges and explains:

>Common threads define the City's on-going pattern or practice of tolerating and ratifying unconstitutional use of deadly force and include, but are not limited to:

---

[1] Defendants also claim the allegations they seek to strike involve acts of people and entities other than Defendants. While it may be accurate that other incidents involved officers other than Defendant Dyk, the City has been a named defendant in many of the incidents involving in litigation, and the officers involved in the events described were Portland Police Bureau officers *at the time of the incident*, even if they left the Bureau after.

Page 4 – **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

a) repeated failures by reviewing supervisory Bureau members and command staff to conduct investigations into matters which call the honesty or integrity of involved and witness officers into question, inclusive of contradictory physical, audio or video evidence; b) failure to effectively discipline officers when their statements of "justification" for their actions lack credibility, c) failure to effectively discipline officers for disregarding signs and symptoms suggesting a subject is mentally ill and/or experiencing a mental health crisis; d) failure to effectively discipline officers who fail to recognize opportunities to de-escalate confrontations and employ de-escalation techniques before resort to tactics likely increase the risk that force will be used.

Each allegation that Defendants move to strike is pertinent and material for two reasons: first, as evidence of the City's ineffective investigation process and non-existent disciplinary system; and second, as evidence of specific examples demonstrating the existence of the alleged unconstitutional practice and custom. The Ninth Circuit has squarely held that both reasons make the evidence relevant and admissible for Plaintiff's *Monell* claim: "We have long recognized that a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (internal quotations omitted). *See also Nehad v. Browder*, 929 F.3d 1125, 1141-1142 (9th Cir. 2019) (citing evidence sufficient to create genuine disputes of material fact on summary judgment for a *Monell* claim, including evidence that a large percentage of the police department's office-involved shootings were avoidable, and that "the department looks the other way when officers use lethal force"); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) *quoting Larez v. Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991) ("[G]eneral evidence of departmental treatment of complaints and of the use of force can 'support the [plaintiff's] theory that . . . disciplinary and complaint processes . . . contributed to the police excesses complained of because the procedures made clear to [the] officer that . . . [he] could get away with anything,'"); *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 803 (9th Cir. 2018) ("[I]t is sufficient under [Ninth

Page 5 – **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

Circuit] case law to prove a 'custom' of encouraging excessive force to provide evidence that personnel have been permitted to use force with impunity.")

The allegations at issue are specific examples of the City's failure to effectively investigate specific incidents; its failure to effectively discipline officers where their articulated justifications lack credibility, where officers fail to take into account that the subjects are people in crisis and fail follow training on engagement with people in crisis, and where officers fail to engage in appropriate de-escalation tactics. As such, the specific allegations in paragraphs 37(a)-(n) inform Plaintiffs' allegation that the City has an "on-going pattern or practice of tolerating and ratifying unconstitutional use of deadly force[.]" In light of the history alleged, a reasonable juror could conclude that the investigatory process and the disciplinary process are a sham and led to the constitutional violation at issue in this case. *See Larez*, 946 F.2d at 646-47.

### B. Ineffective Investigatory and Discipline System Allegations

The allegations at issue establish several things. First, since 2003, in the rare instances where the City even *attempts* to discipline an officer, except for one example, the attempt was unsuccessful or the person attempting discipline was removed from their position. *See* ¶¶37(d), (e), (f). Given this, it is unsurprising that the City did not take any action against Officer Dyk in this case.[2] The effect on the police officers on the street, and the effect on Officer Dyk in this case, is that they know they "can get away with anything." *Velazquez*, 793 F.3d at 1027.

---

[2] Defendants take issue with allegations related to the Portland Police Association's role in preventing them from instituting an effective discipline process, claiming that PPA is the City's "adversary". Whether true or not, it does not matter. *Monell* liability is premised on the practice or custom within the City. The fact that the City has failed to effectively arbitrate discipline or negotiate a collective bargaining agreement that allows for effective discipline does not insulate them from liability.

Page 6 – **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

Second, several allegations demonstrate that officers involved in questionable deadly force incidents are subsequently honored or promoted by the City. *See* ¶¶37 (a), (c), (d), (j), and (n). Finally, the allegations in subparagraphs (a), (b), (c), (d), (f), (g), (i), (j), (k), (l), and (m) are examples of the City's investigatory practices of failing to address incidents which call the honesty or integrity of involved officers and witness officers into question, even in the face of contradictory physical, audio or video evidence, and the City's failure to effectively discipline officers when their self-serving statements justifying their actions lack credibility. *See* Compl. ¶38.

### C. Prior Similar Incidents Involving People in Mental Health Crisis

In addition to being material and pertinent for the reasons stated above, the incidents described in paragraphs 37(d) (James Chasse), (f) (Aaron Campbell), (g) (Keaton Otis), (h) William Monroe,[3] (j) (Merle Hatch), (m) (Lane Martin), and (n) (Robert Delgado) are also material and pertinent as prior similar incidents establishing the custom and practice of the City for failing to properly investigate or hold officers accountable for their interactions with people in mental health crisis and/or the failure to employ de-escalation tactics.

### III.   CONCLUSION

The City's motion represents a Catch-22 of alleging section 1983 claims. Make conclusory allegations without alleging specific incidents in support, and the defendants will argue that the complaint ought to be dismissed for failing to state a claim; but make specific allegations of incidents supporting a *Monell* claim and the defendants will move to strike the allegations for being too detailed. Taking Plaintiffs' allegations as true, and liberally construing

---

[3] Plaintiffs include William Monroe, because, despite PPB disciplining Officer Reister for using lethal force, to Plaintiffs' understanding, Riester was not disciplined for failing to de-escalate or take into account Monroe's mental health crisis.

Page 7 – **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

the Complaint in the light most favorable to them, *Stearns*, 763 F. Supp. 2d at 1140, the allegations in paragraph 37 are not only "pertinent" and "material," they are directly relevant to the *Monell* claims made by plaintiffs. For the foregoing reasons, Plaintiffs respectfully requests the court deny Defendants' motion.

Dated:  February 27, 2023. Respectfully submitted,

*/s Ashlee Albies*
**J. Ashlee Albies**, OSB No. 051846
Maya Rinta, OSB No. 195058
Albies, Stark & Guerriero

*Attorneys for Plaintiff*

Page 8 – **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**