IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ESTATE OF AARON D. STANTON by Douglas Stanton, Personal Representative, and A.S., a minor, by and through her Guardian ad Litem, Douglas Stanton,<br><br>Plaintiffs,<br>v.<br><br>JOSHUA DYK and CITY OF PORTLAND,<br><br>Defendants. | Case No.: 3:23-cv-01767-AN<br><br>OPINION AND ORDER |

     Plaintiffs Estate of Aaron D. Stanton and A.S., a minor, brought this action against defendants Joshua Dyk and City of Portland (the "City"), alleging use of excessive deadly force in violation of the Fourth Amendment under 42 U.S.C. § 1983 against both defendants and wrongful death/battery, wrongful death/negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress against the City only.

     Defendants move to strike paragraphs 37(a) through (n) of the complaint. After reviewing the parties' pleadings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated herein, the motion is DENIED.

## LEGAL STANDARD

**1.   Motion to Strike**

     Federal Rule of Civil Procedure ("FRCP") 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter" before any responsive pleading is filed. Immaterial matter is "'that which has no essential or important relationship to the claim for relief or the defenses being pleaded,'" while impertinent matter "'consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994).

1

Generally, motions to strike are "disfavored and infrequently granted." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008). "'A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Biggs v. City of St. Paul*, No. 6:18-cv-506-MK, 2019 WL 1114868, at *1 (D. Or. Mar. 8, 2019) (quoting *Contreras ex rel Contreras v. County of Glen*, 725 F. Supp. 2d 1157, 1159 (E.D. Cal. 2010)).

**2.      Municipal Liability**

42 U.S.C. § 1983 creates a cause of action for the deprivation of constitutional rights by any person acting under color of law. Municipalities can also be held liable for violations of constitutional rights under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978). There are three theories of *Monell* liability: a plaintiff may show (1) that a policy, practice, or custom of the municipality was "a moving force behind a violation of constitutional rights"; (2) that a municipality's failure to train employees amounts to a deliberate indifference to a constitutional right; or (3) that an official with final policy-making authority ratified a subordinate's conduct. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) and *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).

A policy or custom must "reflect[ ] deliberate indifference to the constitutional rights of [the municipality's] inhabitants." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (quoting *Harris*, 489 U.S. at 392). In *Harris*, the Supreme Court found that a municipality is deliberately indifferent when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." 489 U.S. at 390.

## BACKGROUND

A.  **Individual Incident**

Plaintiffs allege that on July 22, 2022, Dyk, a City of Portland Police Officer on the Portland Police Bureau ("PPB") Focused Intervention Team, shot Aaron D. Stanton with an assault rifle "from a position of concealment and cover within a fraction of a second following Aaron Stanton discharging a semi-automatic pistol into the air from the front porch" of his Portland home. Compl., ECF [1], ¶ 1. Dyk, plaintiffs allege, knew that Stanton had been firing rounds intermittently for approximately an hour at the time of shooting, had done so on previous occasions, and had never threatened violence or pointed the gun at anyone. *Id.* ¶ 2. Dyk also knew that A.S., Stanton's six-year-old daughter, was present and would likely witness his injury and death. *Id.* ¶ 3.

Plaintiffs state that Stanton was diagnosed with "episodic mood disorder, chronic pain, traumatic brain injury and bipolar disorder" and that his conditions "intermittently manifested themselves in alcohol abuse, substance abuse, psychotic behavior, and medication noncompliance and, at times, necessitated hospitalization." *Id.* ¶ 15. On the night of the shooting, Stanton, at home with A.S., "consumed alcohol to the point of severe intoxication and commenced firing lawfully owned firearms into the air from the front porch of his home[.]" *Id.* ¶ 16. The City's Bureau of Emergency Communications received several 9-1-1 calls reporting that Stanton was discharging firearms on his property, but not aiming at any person. *Id.* ¶ 17.

PPB officers were dispatched to Stanton's home and arrived at 8:40 p.m., where they were informed of Stanton's name and that he had been observed to fire about thirty shots into the air and then go back inside his house. *Id.* ¶¶ 20-22. Plaintiffs allege that at least one officer was familiar with Stanton and knew of his alcohol abuse and mental health conditions and that he had not threatened people during prior contacts, and that the officers observed over the radio that evening that Stanton appeared "extremely intoxicated." *Id.* ¶ 23.

At the time of the shooting, multiple officers were present with Dyk. Two officers, Mark

3

Piombo and Lino Pavon, were also pointing rifles at Stanton, while six other officers (the "non-shooting officers") were present and not aiming rifles at Stanton. *Id.* ¶ 4. Piombo and Pavon had their rifles pointed at Stanton at the time of the shooting but did not fire. *Id.* ¶ 6. Dyk and the non-shooting officers agreed to a plan: if Stanton showed himself, the officers would state that police were present and command Stanton to surrender; if Stanton continued to shoot in the air, the officers would "challenge" Stanton to put down his gun and surrender; if Stanton aimed the gun at the officers, they would "do what we need that is reasonable." *Id.* ¶ 5.

At 8:44 p.m., approximately four minutes after the officers arrived and "took positions of hard cover and concealment" near Stanton's home, officer Jeffrey Haagenson announced that he had located a phone number for Stanton and a woman believed to be Stanton's wife. *Id.* ¶¶ 21, 24. He requested permission to call Stanton, but PPB Officer Adi Ramic told him, "don't call yet." *Id.* ¶ 24.

At 8:51 p.m., Stanton and A.S. emerged from inside the house onto the front porch, where Stanton fired several shots into the air with a handgun. *Id.* ¶ 27. An officer shouted "police, put your hands up." *Id.* ¶ 29. Stanton fired several shots into the air with A.S. close to him. *Id.* ¶ 30. At 8:53 p.m., A.S. left the front porch and walked over to the driveway, behind Stanton's car. *Id.* ¶¶ 31-32. Moments after, Dyk shot Stanton. *Id.* ¶ 1. A.S. "ran back to the porch and knelt beside her father until removed by a police officer." *Id.* ¶ 33.

Plaintiffs allege that Dyke told the City that deadly force was justified because Stanton "leveled" his gun prior to the shooting. *Id.* ¶ 39. The City, however, allegedly possessed contradictory evidence and knew that Stanton had not aimed a weapon at the officers, but did not discipline Dyk or the other officers involved. *Id.*

Plaintiffs argue that the shooting was a use of excessive deadly force in violation of the Fourth Amendment and that the City should be held liable for its custom and practice of failing to investigate and discipline uses of excessive deadly force. *Id.* ¶¶ 40-43. In addition, plaintiff brings state law claims for wrongful death/battery and wrongful death/negligence because the City failed to call or await the arrival of the Behavioral Health Unit, more advanced officers with crisis intervention skills, or to employ

crisis intervention and de-escalation tactics, or any kind of communications, before shooting Stanton. *Id.* ¶¶ 46-51. Plaintiffs also bring state law claims on behalf of A.S. for intentional infliction of emotional distress and negligent infliction of emotional distress because she was present at her father's shooting and death and was told by the officer who took custody of her after the shooting that "your father wanted to die," which caused anxiety, nightmares, grief, and severe emotional distress. *Id.* ¶¶ 52-60.

**B.**     ***Monell* Pleadings**

In support of their *Monell* claim, plaintiffs allege that the PPB has a pattern and practice of unconstitutional use of force. *Id.* ¶ 35. As evidence, plaintiffs state that the United States Department of Justice brought suit against the City in 2012 to remedy the pattern and practice, which resulted in a settlement that "included terms related to the City's use of force policies, practices, and training, enhancement of its data collection and accountability practices." *Id.* As a result of the allegations, the PPB "revised its use of force policies and training to emphasize de-escalation and accountability when policies and training intended to mitigate use of force are violated [;]" however, plaintiffs allege that the PPB "does not effectively discipline officers who fail to de-escalate confrontations, does not effectively discipline officers who use excessive force, inclusive of excessive deadly force and does not effectively discipline supervisors who fail to follow the use of force review and reporting procedures." *Id.* ¶ 36. Plaintiff cites the DOJ's 2023 Periodic Compliance Assessment Report, which found that, ten years after the settlement, "accountability remains a primary source of compliance concerns." *Id.*

Since 2003, PPB officers have been involved in at least sixty officer-involved shootings. *Id.* ¶ 37. The PPB has disciplined officers for officer-involved shootings only three times, and two of those disciplinary actions were subsequently invalidated in union grievance arbitration. *Id.* There were fifty-seven officer-involved shootings and in-custody deaths between 2008 and 2018, and thirty-three of those involved persons in mental health crises. *Id.* Plaintiffs provide numerous examples of officer-involved shootings between 2003 and 2019, many of unarmed people and/or people suffering mental health crises, which, they allege, demonstrate "common threads" of failures to conduct investigations and failures to effectively discipline officers for justifications for shootings that lack credibility, disregarding signs of

mental illness, and failures to de-escalate before using lethal tactics. *Id.* ¶¶ 37(a)-(n), 38. Out of fourteen examples, one example resulted in an officer being disciplined, three examples resulted in an officer receiving some form of disciple that was effectively appealed by the Portland Police Association ("PPA"), and in the remaining ten examples, the officer was not disciplined. *Id.* Of the ten examples where the officer was not disciplined, four officers were later promoted. *Id.*

C. **Procedural Background**

Plaintiffs served tort claim notice on defendants on April 4, 2023, and filed the complaint on November 28, 2023. *Id.* ¶ 34. A.S.'s grandfather, Douglas Stanton, was appointed as her guardian ad litem. ECF [11].

On February 2, 2024, defendants filed the Motion to Strike Complaint ("Mot. to Strike"), ECF [12]. Plaintiffs oppose the motion. Resp. in Opp. To Mot. to Strike Compl. ("Pls.' Resp."), ECF [16].

**DISCUSSION**

Defendants move to strike paragraphs 37(a)-(n) of the complaint, arguing that they contain factually distinct examples of police conduct that do not demonstrate a policy, custom or practice. Mot. to Strike 5.

First, defendants argue that the allegations in these paragraphs "describe acts of people or entities other than Defendants here." *Id.* Second, defendants state that "many" of the allegations contain "conclusory statements that are factually inaccurate." *Id.* Third, defendants argue that "many of the allegations allege failures that have no bearing on Plaintiffs' claims." *Id.* As a result, defendants conclude, the allegations cannot "represent the moving force or cause in fact of the shooting at issue here," are immaterial and impertinent, and should be struck. *Id.*

The allegations in paragraphs 37(a)-(n) describe acts by officers other than defendant Dyk because such acts support a *Monell* claim by alleging the existence of a long-standing practice, that the City was aware of a need for discipline, and that the City was deliberately indifferent to such a need. Such allegations are commonplace when pleading *Monell* claims because of their evident relevance. *See Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) ("We have long recognized that a custom or

6

practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." (internal quotations omitted)).

Defendants provide little support for the argument that the paragraphs contain conclusory statements that are factually inaccurate, pointing only to paragraph 37(a), in which defendants assert that plaintiffs omitted the fact that a federal jury found no excessive force was used by the shooting officer. Mot. to Strike 5. An omission of what defendant asserts is a relevant fact is not a basis for striking a pleading.

Defendants' argument that the examples in paragraphs 37(a)-(n) are factually distinct from defendants' alleged conduct relating to Stanton essentially asserts that such allegations are so dissimilar as to be immaterial. The Court finds, however, that paragraphs 37(a)-(n) are relevant and, therefore, material. They need not describe identical events to support a *Monell* claim. All the paragraphs at issue describe officer-involved shootings, many of which involved people with mental illness, of which only one resulted in effective discipline of the involved officer. They suggest a pattern of repeated excess use of lethal force and allege that a failure to discipline contributed to that conduct. The fact that Stanton was armed, while some of the people in the examples were unarmed, does not make the allegations immaterial. *See Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) ("'[A] custom or practice can be inferred from . . . evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded'" and "general evidence of departmental treatment of complaints and of the use of force can 'support[ ] the [plaintiff's] theory that . . . disciplinary and complaint processes . . . contributed to the police excesses complained of because the procedures made clear to [the] officer that . . . [he] could get away with anything[.]'") (quoting *Hunter*, 652 F.3d at 1232–33 and *Larez v. City of L.A.*, 946 F.2d 630, 646–47 (9th Cir.1991)).

Defendants additionally argue that plaintiffs' allegations that the PPA successfully appealed certain disciplinary actions "contradict[s] his claims" because the City did not control the PPA's positions and that a 2023 finding of "substantial compliance with the officer accountability" undercuts plaintiffs' pleadings. Mot. to Strike 5-6. These arguments do not allege that the pleadings at issue are

7

redundant, immaterial, impertinent, or scandalous. Instead, they concede that such pleadings are material, but challenge the strength of their relevance and the strength of plaintiffs' overall allegations. A motion to strike is not a vehicle to challenge the merits of a claim, and there is no basis to strike the pleadings based on speculation on the relative merits.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Strike, ECF [12], is DENIED.

IT IS SO ORDERED.

DATED this 17th day of June, 2024.

Adrienne Nelson
United States District Judge