

# P.I.E. Corp

## Personal Injury Evaluations

Jennifer S. Harris, PhD | 2915 McCarver St., Suite 200, Tacoma, WA 98403 | personalinjuryevaluations.com

February 27, 2025

The Honorable Adrienne Nelson
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON
1000 Southwest Third Avenue
Portland, Oregon 97204

RE: Request for Consideration Regarding Deposition of A. S., a Minor Witness in

Case 3:23-cv-01767-AN
ESTATE OF AARON D. STANTON, by DOUGLAS STANTON, Personal Representative, and A. S., a minor, by and through her Guardian ad Litem, DOUGLAS STANTON,
v.
JOSHUA DYK and CITY OF PORTLAND, a municipal corporation

Dear Judge Nelson,

I am writing to respectfully request the following considerations of A. S., an 9-year-old minor, whose deposition is being requested in relation to the case concerning the tragic death of her father, Aaron Stanton. I am a licensed clinical psychologist in Washington State who regularly conducts forensic evaluations of psychological damages in civil litigation. At this time, I have not been retained to evaluate A. S., so the recommendations addressed in this letter are based on my expertise conducting developmentally appropriate interviews using the revised protocol developed by the National Institute of Child Health and Human Development (NICHD).

It is my understanding that the minor has not yet undergone a psychological damages evaluation or completed any evidence-based trauma therapy. However, it is likely that she has endured severe emotional and psychological trauma as a direct witness to her father being fatally shot by police. Therefore, compelling her to participate in a formal deposition would likely exacerbate her distress and potentially cause significant harm to her well-being.

Based on my extensive experience in the field, I would recommend that A. S. not participate in a deposition until she has met with an evidence-based treatment provider who can develop a therapeutic safety plan. The American Academy of Pediatrics and child psychology experts

consistently emphasize the long-term impact of exposure to violence on young children. Requiring A. S. to recount such a traumatic event in a legal setting may not only retraumatize her but could also interfere with her healing process, disrupt her sense of stability, and lead to serious emotional and psychological repercussions, including anxiety, depression, and post-traumatic stress disorder (PTSD). Given her young age and vulnerability, it is in her best interest to be shielded from unnecessary distress whenever possible.

However, if the court determines that her testimony is absolutely necessary, I respectfully request that the following considerations and accommodations be made to minimize the potential harm to the minor which are consistent with Galbreath v. Braley, 318 Ga. App. 111, 733 S.E.2d 412 (2012):

1) In alignment with best practice standards in conducting child forensic interviews, I recommend that the person who takes the minor's deposition has specialized training in child forensic interviewing techniques. Police, social workers, and psychologists are expected to have an understanding of child development, trauma responses, and how to elicit accurate information from children; therefore, it seems reasonable that an attorney who conducts a deposition of a minor should also be familiar with these key aspects.

2) Alternatives to this could also include that A. S. be allowed to provide testimony in a more child-appropriate setting, such as through a recorded interview with a trained child forensic interviewer, rather than in a formal deposition setting.

3) Rapport building is emphasized as a best practice standard when interviewing minors. Due to the adversarial nature of a deposition, rapport building can be difficult. It will be important to clearly articulate the role of the individual taking her deposition. The individual taking the deposition should prioritize A. S.' well-being and minimize potential harm by reasonably maintaining a calm and non-judgmental attitude.

4) In order to create a safe environment consistent with best practice standards, the deposition should involve setting clear expectations. It will be vital to explain the purpose and ground rules of the deposition using developmentally appropriate language. It will also be important to have A. S. relay her understanding of those rules to prevent misunderstanding (e.g., "What is your understanding of what I just said?").

5) The individual taking the deposition should avoid asking leading or suggestive questions as well as double-barreled questions (i.e., two questions in the same prompt). They should use age-appropriate language in the form of open-ended questions to encourage narrative responses and allow her to provide a detailed account without interruption. Best practice standards also recommend summarizing the information provided to ensure understanding as well as acknowledging and validating her feelings without minimizing her experience.

6) It would be beneficial to hold the deposition in a neutral location or one of her choosing; although, I recommend against this occurring in her home as her safe places could then become associated with trauma. This may include allowing the deposition to be taken remotely via audio visual means.

7) The amount of time an 8-year-old can participate in a deposition should be reasonable and age-appropriate, typically no more than **1 to 2 hours** at a time, with breaks as needed and be allowed to discontinue the deposition if necessary for her psychological health. Extending beyond that may be unreasonable and stressful for the child. Courts generally recognize that young children have limited attention spans and may become fatigued or distressed during legal proceedings.

8) The minor should be allowed to have one or more support persons (parent, guardian, or another trusted individual), in addition to counsel and Conservator, to provide comfort and emotional support throughout the process. To best serve A. S.' needs during the deposition, I recommend that a child trauma specialist (e.g., a licensed child psychologist or trauma specialist) be present during any questioning to ensure that her mental health is protected and that the process is conducted in a trauma-informed manner. Furthermore, I recommend that everyone present during the deposition remain sensitive to her emotional state by observing her trauma responses through nonverbal cues which may be reflected in physical reactions, eye contact, facial expressions, vocal characteristics, body language, self-soothing behaviors, and other behavioral indicators.

9) Any testimony given by A. S. should remain confidential to protect her from public scrutiny or additional emotional harm.

In closing, I hope that all parties consider the ways in which this could put A. S. at risk for retraumatization and I hope the benefits of this deposition outweigh the consequences that it could have on her functioning.

Thank you for your time and consideration. I trust that the court will act in the best interest of this vulnerable child, ensuring that justice does not come at the cost of further harm to her well-being.

Sincerely,

*Jennifer J. Harris PhD*

Jennifer S. Harris, PhD
Licensed Psychologist
Forensic Evaluator
jennyharrisphd@gmail.com
(509) 723-7757